IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROYAL FLAGG, SARAH FLAGG, AMANDA HAUGEN, and DOUGLAS BURDINE, <br><br> **Plaintiffs,** <br><br> v. <br><br> KANSAS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, GREAT BEND POLICE DEPARTMENT, SAINT FRANCIS MINISTRIES, INC., and SHESHA LNU, <br><br> **Defendants.** | Case No. 21-1281-JAR-GEB |

## MEMORANDUM AND ORDER

Plaintiffs, appearing *pro se* and *in forma pauperis*, bring this action against several Defendants arising out of the placement of Plaintiff Amanda Haugen's children in protective custody following abuse allegations. Before the Court are (1) Saint Francis Ministries, Inc. and Shesha LNU's Motion to Dismiss (Doc. 24); (2) Kansas Department of Children and Family Services and Robert Williams' Motion to Dismiss (Doc. 26); (3) Great Bend Police Department's Motion to Dismiss (Doc. 28); and (4) Plaintiff Douglas Burdine's Motion for Voluntary Dismissal (Doc. 40).

The deadline to respond to Defendants' motions to dismiss was February 15, 2022, but Plaintiffs failed to respond by that deadline. On March 3, 2022, this Court issued an Order to Show Cause to Plaintiffs why the motions to dismiss should not be granted as unopposed. On March 16, 2022, Plaintiffs responded to the Order to Show Cause and to each motion to dismiss. In their response to the Saint Francis Ministries, Inc.'s ("St. Francis") motion to dismiss, Plaintiffs indicate that they do not oppose dismissal; therefore, that motion is granted as unopposed. Burdine's motion to voluntarily dismiss his claims in this matter is granted. As

explained more fully below, the Court has considered the briefs on the other two motions to dismiss, including Plaintiffs' March 16 responses, and grants those motions.

**I.      Background**

The following facts are alleged in Plaintiffs' Complaint and assumed to be true for purposes of deciding these motions.  On October 9, 2021, Plaintiff Amanda Haugen asked her brother-in-law, Plaintiff Royal Flagg, to pick up her two sons from school.  When Flagg arrived at the school, he was confronted by Great Bend Police Officer Reynolds.  Reynolds told Flagg that the children, HH and DR, were to be placed in protective custody because HH had informed school officials that Haugen burned him with a cigarette.  Reynolds told Flagg to inform Haugen of the action, but did not mention any other alleged abuse during this conversation.  Defendants Kansas Department of Children and Families ("DCF") and the Great Bend Police Department ("GBPD") never directly informed Haugen that her children were being placed in protective custody.

The State of Kansas brought a complaint regarding this matter.[1]  Plaintiffs complain that Haugen was not provided an attorney for these proceedings, that DCF and St. Francis refused to let Plaintiffs Sarah Flagg, Royal Flagg, and Douglas Burdine participate in the case planning meetings, that all Plaintiffs were alleged to have abused HH without supporting documentation, that the children were not provided with medical care until three weeks after they were taken into protective custody, and that the children were not properly medicated while in protective custody.  Royal Flagg asserts he is a mandatory reporter in Kansas due to his job as a Registered

---

[1] According to a court document submitted by St. Francis in support of its motion to dismiss, a Journal Entry and Order of Temporary Custody of Indian Child was entered in Barton, County, Kansas District Court case on October 13, 2021, and the matter was scheduled for another hearing in November 2021.  Doc. 25-1.

Behavioral Tech, and has been suspended from his job pending adjudication of the allegation "of his participation in the abuse of a child."[2]

Plaintiffs allege claims under 42 U.S.C. § 1983 for violations of their rights to due process. Plaintiffs also list as § 1983 claims slander/defamation, abuse/neglect, and obstruction of an investigation. Plaintiffs additionally cite violations of 25 U.S.C. § 1912(c) in their list of claims, which is a provision under the Indian Child Welfare Act ("ICWA") governing notice to parents and other individuals in child custody proceedings involving Native American children.

In their prayer for relief, Plaintiffs seek return of the children to Amanda Haugen. Plaintiff Royal Flagg seeks relief from his suspension and $2,720 in lost wages. Douglas Burdine seeks $656 in lost wages. All Plaintiffs seek punitive damages.

## II. Standards

Defendants move to dismiss this case for lack of subject matter jurisdiction on three grounds: (1) standing; (2) mootness; (3) sovereign immunity, and (4) *Younger* abstention. Federal courts are courts of limited jurisdiction and must therefore have a statutory or constitutional basis for exercising jurisdiction.[3] The party seeking to invoke federal subject matter jurisdiction has the burden to establish that jurisdiction is proper,[4] and mere conclusory allegations of jurisdiction are not enough.[5] Pursuant to the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."[6]

---

[2] Doc. 1 at 9 ¶ 13.

[3] *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).

[4] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[5] *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[6] Fed. R. Civ. P. 12(h)(3).

GBPD also moves to dismiss under Fed. R. Civ. P. 12(b)(6) because it lacks the capacity to be sued under Rule 17(b). To survive a motion to dismiss brought under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[7] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but it requires more than "a sheer possibility."[8] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[9] Finally, the Court must accept the plaintiff's factual allegations as true, view those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law.[10]

Because Plaintiffs appear *pro se*, the Court must construe their pleadings liberally.[11] But the Court cannot thereby assume the role of advocate,[12] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[13]

---

[7] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[10] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

[11] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[12] *Id.*

[13] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

### III. Discussion

#### A. Standing and Mootness

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."[14] One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing. That doctrine "requires federal courts to satisfy themselves that 'the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[15] GBPD challenges the standing of Plaintiffs other than Haugen to bring claims based on the placement and treatment of Haugen's children in protective custody. The Court agrees that the other Plaintiffs have not alleged facts sufficient to support standing to challenge the decision to place Haugen's children in protective custody. However, to the extent Plaintiffs' claims are based on reputational harms caused by Defendants' allegations that they too abused the children, they have standing to pursue those claims.

Standing considers whether there is a case or controversy at the time the action is filed, while "mootness ensures it remains one at the time a court renders a decision."[16] If events subsequent to the filing of the case resolve the dispute, the federal court must dismiss it as moot.[17] "In deciding whether a case is moot, '[t]he crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world.'"[18] "The court

---

[14] *See Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

[15] *Id.* at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

[16] *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016).

[17] *Unified Sch. Dist. No. 259 v. Disability Rights Ctr.*, 491 F.3d 1143, 1147 (10th Cir. 2007).

[18] *Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) (alteration in original) (quoting *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)).

must decide whether a case is moot as to 'each form of relief sought.'"[19]  Plaintiffs concede that Haugen's children have been returned to her custody since the time this case was filed. Therefore, their requested relief for return of the children to Haugen is moot.  The Court considers below the remaining claims for relief—monetary relief and Royal Flagg's request that his suspension be lifted.

### B.   Eleventh Amendment Immunity—DCF

Plaintiffs allege claims against DCF, a state agency.  "Sovereign immunity is the privilege of the sovereign not to be sued without its consent."[20]  The principle of sovereign immunity, which is confirmed by the Eleventh Amendment, provides that states and state agencies are generally immune from suit.[21]  When sovereign immunity applies, it deprives the court of subject matter jurisdiction, thereby shielding states from suit.[22]  Thus, "[t]he Eleventh Amendment has been interpreted to bar suits against states and state agencies for money damages in federal court."[23]  Sovereign immunity does not apply when a state waives its immunity, and in some circumstances Congress may abrogate states' sovereign immunity by appropriate legislation.[24]  "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."[25]  A valid waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."[26]  Similarly, "Congress' intent to

---

[19] *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019)).

[20] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

[21] *Id.* (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)).

[22] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

[23] *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) (citations omitted).

[24] *Va. Off. for Prot. & Advoc.*, 563 U.S. at 253–54 (citations omitted).

[25] *Id.* at 254.

[26] *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'"[27] Here, DCF is a state agency. Because there has been no waiver or valid abrogation, the Court lacks subject matter jurisdiction over Plaintiffs' claims against DCF.

In the form Complaint, Plaintiffs list under "Defendant No. 1," DCF, and for "Job or Title (*if known*)," they list "Robert Williams, Specialist."[28] He is not separately listed as a Defendant and there are no specific factual allegations in the Complaint asserting that he personally participated in the conduct giving rise to Plaintiffs' claims. To the extent Plaintiffs separately allege claims against Williams in his official capacity, they too are barred by the doctrine of sovereign immunity because when a plaintiff sues a government employee such as Williams in his official capacity under § 1983, the plaintiff pleads an action against the government employer.[29] In *Kentucky v. Graham*, the Supreme Court held that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than a name, to be treated as a suit against the entity."[30] Like the claims against DCF, to the extent Plaintiffs' allege official-capacity claims against Williams, they are barred by the doctrine of sovereign immunity.

The only potentially applicable exception to sovereign immunity in this case is described in *Ex parte Young*, which allows suits for prospective injunctive relief for continuing violations of federal law.[31] To determine whether the *Ex parte Young* exception applies, this Court "need only conduct a straightforward inquiry into whether the complaint alleges an

---

[27] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (quoting *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 786 (1991)).

[28] Doc. 1-1 at 2.

[29] *Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978).

[30] 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).

[31] 209 U.S. 123 (1908).

ongoing violation of federal law and seeks relief properly characterized as prospective."[32]  None of Plaintiffs' claims identify ongoing violations of federal law; rather, they identify prior, discrete incidents of alleged wrongdoing without any reference to continuing violations.  The only potential ongoing violation alleged is the protective custody of Haugen's children.  But, as described above, the children's placement with Haugen has already been accomplished and is therefore moot.

Defendants DCF and Williams are entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction over all official-capacity claims against them.

### C. *Younger* Abstention

It is unclear from the record whether the state court proceeding regarding the HH and DR's placement is ongoing.  According to a court record submitted by St. Francis in support of its motion to dismiss, a Journal Entry and Order of Temporary Custody of Indian Child was entered on October 13, 2021, and the matter was scheduled for another hearing in November 2021.[33]  "In the absence of extraordinary circumstances, the *Younger* doctrine directs federal courts to refrain from interfering in ongoing state civil proceedings."[34]  *Younger* abstention "is the exception, not the rule."[35]

In determining whether *Younger* abstention is appropriate, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state

---

[32] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

[33] Doc. 25-1.

[34] *Ysais v. Child. Youth & Fam. Dep't*, 353 F. App'x 159, 161 (10th Cir. 2009) (citing *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996)).

[35] *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).

proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."[36]  "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain."[37]

To the extent the Barton County, Kansas state court proceeding is ongoing, this Court must abstain under *Younger*.  First, the state court action is a civil proceeding.  Second, the Supreme Court has directed that "the federal court should not exert jurisdiction if the plaintiffs 'had an *opportunity* to present their federal claims in the state proceedings.'"[38]  "[A]bstention is appropriate unless state law clearly bars the interposition of the [federal statutory] and constitutional claims."[39]  Plaintiffs have not made the necessary showing that the state court is an inadequate forum, especially given that Kansas courts may consider constitutional challenges to child custody and adoption proceedings on appeal.[40]  Finally, child custody actions clearly involve important state interests.  The Tenth Circuit has noted that "adoption and child custody proceedings are an especially delicate subject of state policy," even with respect to children whose placement is governed by the ICWA.[41]  Because the *Younger* requirements are met, the Court is required to abstain.[42]

---

[36] *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (quoting *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999)).

[37] *Id.* (citing *Seneca-Cayuga Tribe of Okla. v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989)).

[38] *Moore v. Sims*, 442 U.S. 415, 425 (1979) (quoting *Juidice v. Vail*, 430 U.S. 327, 337 (1977)).

[39] *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999) (second alteration in original) (quoting *Moore*, 442 U.S. at 425–26).

[40] *See Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1266 (D. Kan. 2008) (noting that Kansas Court of Appeals has often addressed constitutional challenges to child custody procedures).

[41] *See Morrow v. Winslow*, 94 F.3d 1386, 1393–96 (10th Cir. 1996); *Fisher*, 531 F. Supp. 2d at 1267 (citing *Morrow*, 94 F.3d at 1393).

[42] In the alternative, if the state court proceedings regarding the children's protective custody have concluded, Plaintiffs claims would "barred by *Rooker-Feldman* [because] the 'claim has merit only if the

### D. Lack of Capacity for Suit—GBPD

Lack of capacity for suit is governed by Rule 17(b), which provides that the issue is determined "by the law of the state where the court is located."[43] The general rule in Kansas is that without specific statutory authority, subordinate governmental agencies do not have the capacity to be sued.[44] "The statutory authority need not be express, but can be implied."[45] Here, GBPD is a subordinate governmental arm of the City of Great Bend. There is no statutory authority in Kansas giving a police department the capacity to sue or be sued.[46] Therefore, GBPD must be dismissed.

## IV. Conclusion

For all of the reasons explained, Defendants' motions to dismiss are granted. St. Francis's motion to dismiss is granted as unopposed; the other Defendants' motions are granted for lack of jurisdiction based on standing, mootness, and *Younger* abstention. GBPD's motion is granted for the additional reason that it lacks capacity for suit, and DCF and Williams' motion is granted for the additional reason that they are immune from suit under the Eleventh Amendment.

**IT IS THEREFORE ORDERED BY THE COURT** that Saint Francis Ministries, Inc. and Shesha LNU's Motion to Dismiss (Doc. 24); Kansas Department of Children and Family Services and Robert Williams' Motion to Dismiss (Doc. 26); and (3) Great Bend Police Department's Motion to Dismiss (Doc. 28) are **granted**.

---

state-court . . . order was unlawful.'" *Shophar v. United States*, 838 F. App'x 328, 332 (10th Cir. 2020), *cert. denied,* 141 S. Ct. 2519 (2021). This is because "the lower federal courts have no authority—that is, no jurisdiction—to give relief from state-court judgments." *Id.* at 332–33.

[43] Fed. R. Civ. P. 17(b)(3).

[44] *Fugate v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 161 F. Supp. 2d 1261, 1266 (D. Kan. 2001).

[45] *Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994) (citation omitted).

[46] *See Williams v. Clay Cnty. Police Dep't*, No. 10-CV-2658-EFM, 2011 WL 2294257, at *2 (D. Kan. June 8, 2011) (citing *Pfuetze v. Kansas*, No. 10-1139, 2010 WL 3892243, at *5 (D. Kan. Sept. 29, 2010)); ), *aff'd*, 442 F. App'x 396 (10th Cir. 2011).

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff Douglas Burdine's Motion for Voluntary Dismissal (Doc. 40) is **granted**. This case is hereby dismissed in its entirety without prejudice.

**IT IS SO ORDERED.**

Dated: May 5, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
